**PROGRESSIVE INSURANCE CO., Appellant–Plaintiff,**

v.

**Norman HARGER, Appellee– Defendant.**

No. 35A05–0204–CV–185.

Court of Appeals of Indiana.

Oct. 25, 2002.

Michael H. Michmerhuizen, Barrett & McNagny, Fort Wayne, IN, Attorney for Appellant.

## OPINION

SHARPNACK, Judge.

■ Progressive Insurance Company ("Progressive") appeals the trial court's partial denial of Progressive's motion for default judgment against Norman Harger.[1] Progressive raises two issues, which we restate as:

I. Whether the trial court abused its discretion by making findings contrary to the allegations of Progressive's complaint after Harger defaulted; and

II. Whether the trial court erred when it found that Harger was entitled to coverage under the terms of the Progressive insurance policy.

We affirm.

The facts most favorable to the trial court's decision follow. Progressive issued a policy of automobile insurance to Harger. Harger was an assistant manager with Papa John's restaurant and was paid a salary for his work. Employees are paid sixty cents "per run" when delivering pizzas. However, sometimes the managers do not take the "per run" fee for delivering pizzas. On September 21, 1995, Harger was driving his insured vehicle to deliver pizzas. While delivering pizzas, Harger was involved in an accident with a vehicle driven by Sabrina Kruse. Progressive paid $49,000.00 to settle claims arising from the accident.

On November 29, 1999, Progressive filed a complaint against Harger. The complaint alleged, in part, that:

3. On or about September 21, 1995, [Harger] used the insured vehicle to carry property, namely pizza, for a fee.

4. [Harger's] behavior and usage of the insured vehicle excluded him from liability coverage pursuant to the terms of the policy.

---

1. Harger failed to file an appellee's brief. When the appellee fails to timely file a brief, the appellant need only establish prima facie error to obtain reversal. *Serletic v. Noel,* 700 N.E.2d 1159, 1161 (Ind.Ct.App.1998); Ind. Appellate Rule 45(D). Prima facie, in this context, is defined as "at first sight, at first appearance, or on the face of it." *Serletic,* 700 N.E.2d at 1161. Thus, Progressive is only required to demonstrate prima facie error to obtain reversal.

5. On or about September 21, 1995, [Harger] was involved in an automobile accident in Ft. Wayne, Huntington County [sic], Indiana.

6. Pursuant to the insurance policy, [Progressive] was forced to pay $49,000.00 for damages incurred as a result of the automobile accident.

7. Pursuant to the insurance policy issued in favor of [Harger], [Harger] agreed to reimburse [Progressive] for any payments made as a result of the issuance and certification of the policy.

8. Demand has been made upon [Harger] to reimburse [Progressive] for the amounts paid, but [Harger] has failed and refused to do so.

9. As a result of the payments made on behalf of [Harger], [Progressive] has suffered unconscionable loss.

10. [Harger] has been unjustly enriched.

Appellant's Appendix at 30–31.

Harger failed to respond to Progressive's complaint, and Progressive filed a motion for default judgment under Ind. Trial Rule 55. The trial court set the matter for hearing and required Progressive to "present a factual basis to establish liability and evidence pertaining to damages." Appellant's Appendix at 2. After a hearing, the trial court issued the following order:

The Court having taken [Progressive's] Motion for Default Judgment under advisement, the Court now finds that although [Harger] has failed to appear or otherwise defend this law suit and has hereby defaulted, nevertheless [Harger] was covered under the terms of the insurance contract between [Progressive] and [Harger].

The Court notes that there are conflicting provisions contained in the insurance contract between [Progressive] and [Harger].

Paragraph 6 set forth on page 6 states that;

Bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle, except a private passenger car, by you while employed or otherwise engaged in a business.

Paragraph 1 on page 11 sets forth the following exclusion:

1. To your insured car while used to carry persons or property for a fee. This exclusion does not [apply] to shared expense carpools whose members are on the way to or from the same place of employment.

The Court finds that [Harger] was delivering a pizza for his place of employment. The Court further finds that [Harger] was using his private passenger car when he was involved in the accident for which [Progressive] seeks to recover expenses from. Although [Progressive] established that [Harger] was delivering a pizza for his place of employment, [Progressive] did not establish that he was paid a separate fee or anything other than his normal wages for such delivery.

Standard rules of construction require that conflicting provisions of the contract be construed against the party preparing the contract. The Court therefore finds [Harger] was covered by the contract between [Progressive] and [Harger] pursuant to the terms contained in paragraph 6.

The Court finds that although [Harger] is defaulted, [Progressive] takes nothing by way of [its] complaint.

Appellant's Appendix at 4–5.

Our standard of review in the area of default judgments is limited. *Siebert Oxi-*

*dermo, Inc. v. Shields,* 446 N.E.2d 332, 340 (Ind.1983). The decision to grant or deny a motion for default judgment is within the trial court's discretion. *R.R. Donnelley & Sons Co. v. N. Tex. Steel Co., Inc.,* 752 N.E.2d 112, 126 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* We reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.* The trial court's discretion in granting or denying a motion for default judgment is considerable. *Green v. Karol,* 168 Ind.App. 467, 473, 344 N.E.2d 106, 110 (Ind.Ct.App.1976). "The trial court should use its discretion to do what is 'just' in light of the unique facts of each case." *Allstate Ins. Co. v. Watson,* 747 N.E.2d 545, 547 (Ind.2001) (quoting *In re Ransom,* 531 N.E.2d 1171, 1172 (Ind. 1988)).

The trial court's discretion should be exercised in light of the disfavor in which default judgments are held. *Watson,* 747 N.E.2d at 547. "[A] default judgment is not generally favored, and any doubt of its propriety must be resolved in favor of the defaulted party." *Id.* (quoting *Green,* 168 Ind.App. at 474, 344 N.E.2d at 111). It is "an extreme remedy and is available only where that party fails to defend or prosecute a suit. It is not a trap to be set by counsel to catch unsuspecting litigants." *Watson,* 747 N.E.2d at 547.

> On the one hand, a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation. On the other hand, there is a marked judicial preference for deciding disputes on their merits and for giving parties their day in court, espe-

cially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. The trial court, in its discretion, must balance these factors in light of the circumstances of each case.

*Green,* 168 Ind.App. at 473, 344 N.E.2d at 110 (footnotes omitted)

### I.

The first issue is whether the trial court abused its discretion by making findings contrary to the allegations of Progressive's complaint after Harger defaulted. Progressive argues that, under Ind. Trial Rule 8(D)[2] and Ind. Trial Rule 55, the allegations of the complaint are deemed admitted when a defendant defaults, and the trial court is not permitted to make "a finding as a matter of law contrary to the allegations in the Complaint." Appellant's Brief at 9.

Ind. Trial Rule 55 provides:

(A) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted.

(B) Default judgment. In all cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against a person known to be an infant or incompetent unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by a representative, his representative) shall be

---

**2.** Ind. Trial Rule 8(D) provides that "[a]verments in a pleading to which a responsive pleading is required, except those pertaining to amount of damages, are admitted when not denied in the responsive pleading."

served with written notice of the application for judgment at least three [3] days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearing or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required.

Where a defendant fails to answer a complaint, even though there is a technical default, the nondefaulting party is not entitled to a judgment by default as a matter of right. *Green,* 168 Ind.App. at 473, 344 N.E.2d at 110; *see also Teegardin v. Maver's, Inc.,* 622 N.E.2d 530, 532 (Ind.Ct.App. 1993).

Our supreme court addressed a similar default judgment issue in *Shoulders v. State,* 462 N.E.2d 1034 (Ind.1984). In *Shoulders,* the defendant was convicted of murder and sought post-conviction relief, arguing that he was not notified of his arrest, that newly discovered evidence existed, and that he was denied adequate assistance of counsel. *Id.* at 1035. He alleged he was detained from November 3, 1968, through December 9, 1968, without an arrest warrant or any court appearance. *Id.* He also alleged his trial attorney never presented evidence in his defense, but instead sat and "watched the jury find petitioner guilty." *Id.* at 1035–1036. The post-conviction court defaulted the State for failure to file a timely answer to the defendant's petition for post-conviction relief. *Id.* at 1035. However, the post-conviction court held a hearing on the merits of the petition and denied the defendant's petition for post-conviction relief. *Id.*

Our supreme court noted that "[t]he effect of the default judgment is that the facts as alleged in the petition are deemed admitted. However, the court must determine whether as a matter of law the facts as alleged in the petition entitle the petitioner to relief." *Id.* Relying upon Ind. Trial Rule 55(B), the supreme court noted that even though a default had been granted, the post-conviction court could conduct a hearing to enable it to enter a judgment. *Id.*

Our supreme court affirmed the denial of the defendant's petition for post-conviction relief and held as follows:

> The facts as alleged clearly raise issues of material fact, and are conclusory as to questions of law. We find no abuse of the post-conviction court's discretion in conducting an evidentiary hearing when confronted with the facts alleged by appellant. We further find that the court did not err in finding that appellant did not sustain his burden of proof. As discussed *infra,* entering of the default did not summarily dispose of the petition in appellant's favor. Appellant's argument that he had met his burden of proof, because the facts as alleged were deemed admitted, is without merit.

*Id.* at 1036. Thus, even though the State defaulted, the defendant was not entitled to a default judgment.[3]

---

3. While Fed. Rule of Civil Procedure 55 is slightly different than Ind. Trial Rule 55, cases discussing our rule's federal counterpart are instructive. Fed. Rule of Civil Procedure 55 provides, in pertinent part:

 (a) Entry.

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
> (b) Judgment.

■ Similarly, here, Harger failed to appear and file an answer to Progressive's complaint and, thus, defaulted. However, Progressive was not automatically entitled to default judgment. Rather, Ind. Trial Rule 55(B) specifically permitted the trial court to conduct a hearing "to establish the truth of any averment by evidence or to make an investigation of any other matter." Thus, the trial court was within its discretion to order Progressive to "present a factual basis to establish liability." Appellant's Appendix at 2. Furthermore, the trial court was within its discretion to make findings contrary to the allegations of Progressive's complaint.[4] *See, e.g., Shoulders*, 462 N.E.2d at 1036. While default may allow for expedited entry of judgment, it is not its purpose to facilitate a judgment that would be based upon untrue allegations of fact or contrary to law. It is not an abuse of discretion to put a party to its proof, default notwithstanding, as the trial court did here with notice to Progressive that it would be required to "present a factual basis to establish liability."

## II.

The next issue is whether the trial court erred when it found that Harger was entitled to coverage under the terms of the Progressive insurance policy. This issue calls upon us to interpret Progressive's insurance policy with Harger. A contract for insurance is subject to the same rules of interpretation as other contracts. *USA*

---

Judgment by default may be entered as follows:

(1) By the Clerk.

When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) By the Court.

In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter,

the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

"[D]efault under [Federal Rule of Civil Procedure] 55 encompasses two steps: the entry of the default and the subsequent entry of a default judgment." 10 *Moore's Federal Practice*, § 55.10 (Matthew Bender 3d ed.). However, "the party making the request is not entitled to a defaulting judgment as a matter of right, even when defendant is technically in default. . . ." Charles Alan Wright, Miller, Arthur R., and Kane, Mary Kay, 10A *Federal Practice and Procedure Civil* § 2685 (1998 & 2002 Supp.). Moreover, "the court, in its discretion, may require some proof of the facts that must be established in order to determine liability." *Id.* at § 2688. *See also* 10 *Moore's Federal Practice*, § 55.20[2][b] (Matthew Bender 3d ed.).

4. In addition to the allegation that Harger used the insured vehicle to carry property for a fee, upon which Progressive bases its claim of noncoverage, its complaint also alleged it was "forced" "pursuant to the policy" to pay damages as a result of the accident. Appellant's Appendix at 31. The latter allegation appears inconsistent with a claim of noncoverage. If Harger had no coverage, Progressive could not be forced to pay pursuant to the policy.

*Life One Ins. Co. of Ind. v. Nuckolls,* 682 N.E.2d 534, 537–538 (Ind.1997). Thus, if the language in the insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning. *Id.* at 538. However, if the language of the policy is ambiguous, we may apply the rules of construction in interpreting the language. *Id.*

When an insurance policy contains an ambiguity, it should be strictly construed against the insurance company. *Id.* "This is especially true where the policy language in question concerns an exclusion clause." *Id.* When an insurance company fails to clearly exclude "that which the insured attempted to protect against, we must construe the ambiguous policy to further the policy's basic purpose of indemnity." *Id.* A policy is ambiguous only if it is "susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning." *Id.*

■ The Progressive policy provides as follows:

> **We** will pay, on behalf of an insured person, damages, other than punitive damages, for which any **insured person** is legally liable because of **bodily injury** and **property damage** caused by accident and arising out of the ownership, maintenance or use of **your insured car** . . . .

5. Progressive argues that Harger stated in his transcribed telephone interview that "he earned sixty cents per mile in addition to his salary." Appellant's Brief at 11. However, the following discussion occurred between Harger and a Progressive representative during a transcribed telephone interview:

Q. OK . . . they pay you 60 cents per run to deliver the pizzas?

A. It depends on if we take it or not. Sometimes, being a manager, we don't take it. All we do is, like on a free pizza, we just go and drop off the pizza.

Appellant's Appendix at 36 (emphasis in original). However, the policy excludes liability coverage for:

1. **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of a vehicle when used to carry person(s) or property for a fee. This exclusion does not apply to shared-expense car pools whose members are on the way to or from the same place of employment.

   \*   \*   \*   \*   \*   \*

6. **Bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle, except a **private passenger car,** by **you** while employed or otherwise engaged in a business.

Appellant's Appendix at 36–37 (emphasis in original). The policy defines "private passenger car" as "a four-wheeled car of the private passenger type." *Id.* at 34.

Here, Progressive presented evidence that Harger was an assistant manager with Papa John's restaurant and was paid a salary for his work. While employees are generally paid sixty cents "per run" when delivering pizzas, managers do not always take the "per run" fee for delivering pizzas.[5]

Under these circumstances, the policy is not susceptible to more than one interpretation and reasonably intelligent persons would not differ as to its meaning. While

That way there's no money taken and that helps run our cost better also.

Q. OK. But you're on salary in addition to that?

A. Yes.

Appellant's Appendix at 28. Thus, the evidence demonstrated that while employees were generally paid sixty cents "per run" to deliver pizzas, sometimes the managers did not take the "per run" fee. No evidence was presented that Harger took the "per run" fee for the pizza delivery in question.

exclusion number six excludes coverage for the use of a vehicle by the insured while employed or otherwise engaged in a business, the exclusion expressly does not apply to a private passenger car. There is no dispute that Harger was driving his personal vehicle at the time of the accident. Similarly, there is no dispute that Harger's personal vehicle was "a four-wheeled car of the private passenger type." Appellant's Appendix at 34. Thus, Harger was driving a private passenger car and exclusion number six is inapplicable.[6]

Exclusion number one applies to certain damages "arising out of the ownership, maintenance or use of a vehicle when used to carry person(s) or property for a fee." Appellant's Appendix at 36. Progressive argues that, given Harger's failure to respond, it did not have the burden of establishing the existence of a separate fee. However, as discussed *supra*, Ind. Trial Rule 55(B) specifically permits a trial court to conduct a hearing to "establish the truth of any averment by evidence or to make an investigation of any other matter." Thus, the trial court was permitted to conduct a hearing on Progressive's claims and Progressive had the burden of establishing the truth of its averments by presenting evidence.

The trial court held that although Progressive established that Harger was delivering a pizza for his place of employment, Progressive did not establish that Harger was paid a separate fee or anything other than his normal wages for such delivery. *Id.* at 4-5. We agree. The evidence presented by Progressive did not demonstrate that Harger was paid a separate fee for the pizza delivery at issue. Thus, exclusion number one is also inapplicable.

Both of the exclusions that Progressive claimed prevented coverage under the policy issued to Harger are inapplicable. Thus, Harger was entitled to coverage under the policy. *Associated Aviation Underwriters v. George Koch Sons, Inc.*, 712 N.E.2d 1071, 1076 (Ind.Ct.App.1999) (holding that an exclusion was inapplicable and the trial court's judgment that the insured was entitled to insurance coverage was not clearly erroneous), *trans. denied.*

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

FRIEDLANDER, J., and NAJAM, J. concur.

---

**6.** Progressive relies upon *Estate of Eberhard v. Ill. Founders Ins. Co.*, 742 N.E.2d 1 (Ind.Ct. App.2000). In *Eberhard*, the parties agreed that the policy contained an exclusion from liability coverage for the use of any vehicle while the insured is employed or otherwise engaged in any business. *Id.* at 3. However, the Estate maintained that an exception to the business-use exclusion was relevant. *Id.* We held that "[t]he exclusion then explains that the policy does not provide coverage when [the insured] is using her personal automobile for a business use." *Id.* Accordingly, we held that the exception to the business use exclusion did not apply. *Id.* However, the exact language of the insurance policy was not set forth in *Eberhard*. From the preceding quotation, it appears that the policy contained a specific limitation on coverage when the insured was driving her personal automobile for a business use. However, no such limitation is evident in the Progressive policy. In any event, in the absence of having the specific policy language, we are unable to say that *Eberhard* is controlling.